JAMES D. TELFER ET AL., PARTNERS TRADING AS TEL-
FER & GENZ, PLAINTIFFS-APPELLEES, v. CLEMENT G.
LAMBERT, DOING BUSINESS AS THE ELIZABETH MA-
CHINE AND IRON WORKS, DEFENDANT-APPELLANT.

Submitted December 3, 1909—Decided March 5, 1910.

1. An entire contract to do work, a part of which is to be done on
Sunday, is void.
2. A subsequent promise to pay for work done on Sunday will
support a recovery for the value of such work.

———

An appeal bringing up a judgment rendered upon a ver-
dict in the District Court of Elizabeth in favor of the plaint-
iff below.

Before Justices REED, BERGEN and MINTURN.

For the plaintiffs and appellees, *Abe G. David.*

For the defendant and appellant, *Samuel Koestler.*

The opinion of the court was delivered by

REED, J. This action was brought by the plaintiff to re-
cover for work and materials done and furnished by the
plaintiff in repairing two boilers on a boat called the "An-
toinette." The work was done for the defendant, who seems
to have been engaged in general work in repairing the boat.

The state of the case shows that on the trial, Mr. Telfer,
of the firm of Telfer & Genz, plaintiffs, testified that on May
13th, 1909, Mr. Lambert, the defendant, asked him, Telfer,
what the wages were for repairing boilers, and said that there
were two boilers to do, and that Mr. Telfer told him sixty cents
an hour, and thirty cents for labor, and double these prices for
work done between twelve o'clock noon on Saturday and Mon-
day. Mr. Telfer further testified that the next day Lambert
told him, Telfer, to go to work on Saturday noon, and that

Telfer guaranteed to have the work on the boilers done by Sunday night at twelve o'clock. Telfer further testified that they started to work on Saturday afternoon at three o'clock, and they worked until six o'clock, then stopped for supper, after which they worked from seven to ten forty-five at night; that they started again on Sunday morning at seven o'clock, and worked until twelve forty-five noon, had lunch, then worked from one until six P. M., then after twenty minutes recess, worked until between eleven and twelve o'clock on Sunday night.

Mr. Genz, the partner of the plaintiff, testified that they worked six hours on Saturday, and worked on Sunday from seven o'clock until noon, then quit an hour, then worked until six o'clock, and then from six thirty until eleven o'clock Sunday night. Genz says, "When we started to work, we knew we would start Saturday afternoon, and the work would take until Sunday night."

At the close of the plaintiff's case there was a motion for nonsuit on the ground that there was an express contract to perform part of the work on Sunday, and because under the contract a part of the work was performed on Sunday. The motion was overruled.

On the part of the defence, Mr. Lambert testified that he had told Telfer on Thursday, May 13th, that he, Lambert, had work to do to line some furnaces; that Telfer asked wages at the rate of sixty cents an hour straight time, and $1.20 for double time; that he, Lambert, told Telfer that he was doing the work on contract and was not getting double time, and that Telfer said: "All right, he would do it on straight time." Lambert says he told him he expected he must work on Sunday, and that he would let Dahman know when he was to go to work. Dahman was the keeper of the cafe where the conversation took place. The next day Lambert appears to have told Dahman to tell Telfer to go ahead Saturday at one o'clock, and Dahman did so. Lambert says that his objection to the bill was that he was charged double time; that he did not object to paying sixty cents an hour straight time.

On rebuttal Telfer says that on Monday he told Lambert the amount of the bill, and Lambert, after saying that the contract should have been in black and white, said: "Never mind what it is; I will pay it. I do not want trouble."

The court charged the jury that they were entitled to allow the plaintiff for the work done, either at the double rate claimed by the plaintiff, or at the single rate claimed by the defendant to have been the contract price.

The defendant excepted to that part of the judge's charge which permitted the jury to consider an allowance to the plaintiff of any compensation for the work done on Sunday.

When the plaintiff rested, so far as can be gathered from the fragmentary testimony appearing in the state of the case, the plaintiff had proved an entire contract to finish certain work, the most of which was to be done on Sunday. If this was the condition of affairs, the contract was void, and the motion should have been allowed. *Stewart* v. *Thayer,* 170 *Mass.* 560; *Handy* v. *St. Paul Publishing Co.,* 41 *Minn.* 188; *Williams* v. *Hastings,* 59 *N. H.* 373; *Fountain Square Theatre Co.* v. *Evans,* 4 *Ohio Dec.* 151.

On rebuttal, however, Telfer, as already stated, testified that on Monday, after the work was completed, Lambert promised to pay the bill. It thus, before the close of the case, became a question for the jury whether an express promise was made to pay for the work, or to pay the bill, and so afforded a ground for recovery by the plaintiff for the work done. *Reeves* v. *Butcher,* 2 *Vroom* 224; *Brewster* v. *Banta,* 37 *Id.* 367.

The refusal to nonsuit, therefore, became justified.

The charge of the judge, however, that the plaintiff was entitled to payment, either at the single rate or the double rate, cannot be supported. It assumed that the plaintiff was entitled to recover without any promise to pay for the work.

For this there should be a reversal.